Good morning everyone. I would like to begin with the matter of Langbord v. US Dept. Treasury. Thank you. Good morning Chief Judge McKee and members of the court. My name is Barry Burke and I represent Roy, David, and Joan Langbord. With the court's permission I would ask to reserve five minutes of our time. Every judge thus far, I consider the government's conduct in this case, agrees that the government's actions were an extraordinary and improper abuse of government's power. And I submit that that is what this case is really about. When the government flouts not only the Constitution, but the law that is intended specifically to curb government's abuse in forfeiture cases, then it must face the one consequence that Congress thought was adequate to deter future forfeiture violations. In fact, the arguments raised by the government about how this will impact cases beyond this one I submit is really a red herring. Because in this case, for the Langbords, there really is no dispute that the government seized these coins. There is no dispute that the government provided notice that it was confiscating these coins and that it would not be going to court so that it was doing it non-judicially. There is no dispute that the Langbords filed a notice of claim to both the US Treasury and the US Mint. And there is no dispute that the government waited until day 87 of their 90-day clock to then decide that they weren't going to file a judicial forfeiture action, they weren't even going to go to court to seek to extend the 90 days, that they were going to ignore the law knowing the risk that the penalty that Congress imposed would apply and forever bar them from seeking forfeiture of these coins, and despite the fact that the three federal agencies that were consulted who actually had forfeiture expertise told them they had to file a forfeiture complaint. Nevertheless, they did not. And I submit that these truly are not disputed propositions. So notwithstanding some issues that have been raised about the technical interpretation of CAFRA, they really don't impact this case because under any plausible interpretation of the CAFRA statute, the result is the same. The coins must be returned to the Langbords. And I also submit that the only consequence to the government of holding it to the requirements of the law is that the government will know when it acts unconstitutionally, unlawfully, and unjustifiably, it will suffer the consequences that the law provides. Turning to the specific issues raised by the government about CAFRA, the government's theory as to why CAFRA doesn't apply has been a moving target in this case. They first argued that the Langbords voluntarily surrendered the coins and relinquished all their rights to the coins, which wasn't so. They then claimed that because they believed these coins were stolen, they could engage in self-help and simply keep these coins without ever going to court. They then claimed that because the notice didn't include specific words that are found nowhere in the statute, that they then were excused from CAFRA. And now in their rehearing papers, they elevate an argument that was worth only a few lines and a footnote in their papers in claiming that even if they did non-judicially confiscate this property, their actions could be excused because it was unauthorized, and therefore they should not have to face the consequences intended for such action. Now, first, that issue was waived. As the court raised in their letter on Friday, it was only in a footnote and a few passing lines. And while the government claims that the Wyeth line of cases doesn't apply to Appellee, we cite cases to show that it was not true. And as this court knows well, just yesterday in Hassan v. New York City, the court applied the waiver of Wyeth principle to New York City, and finding they waived as Appellee is doing exactly what the government did here. And I would submit even without the waiver, the government's argument about the $500,000 threshold doesn't even apply because that threshold doesn't apply to the 1607A2 and A4 provisions that allow for administrative forfeiture of coins or for property the government alleges is stolen and therefore can't be imported. Neither are affected, nor did the government raise arguments about those provisions in a footnote or otherwise. Turning to the declaratory judgment, if I may, the government says that if they don't have the ability to file a declaratory judgment action in these circumstances, it will somehow stymie their forfeiture efforts. Not surprisingly, the government doesn't cite a single case because as far as we could tell, the government has never filed a declaratory judgment in aid of forfeiture with a forfeiture claim other than with regard to the 1933 double legal. In this case and in the prior case that the government settled by auctioning off the coin and splitting the proceeds with Mr. Fenton. And I would submit that applying a declaratory judgment in these circumstances would eviscerate CAFRA to allow a declaratory judgment claim to be used to circumvent CAFRA's time requirements, statutory procedures, and the language jury right. And the last point I would just make is while the government claims it was proven these coins were stolen, it's hotly disputed and we submit the decision was based on clearly inadmissible evidence. If the purpose of a forfeiture action is to obtain title to the property and the government's position is you'd have a lost title if all these coins were always ours and they were illegally taken out of the mint, why is the government required to file a forfeiture complaint? Because the government must prove it, Your Honor. And the point of CAFRA was to say that the government has vast powers to conduct administrative forfeiture based on its own belief. The government must prove what? I'm sorry. They must prove that they were stolen and it has title. They must prove it. And Congress intended through CAFRA to say when the government says I want to administratively forfeit it, in other words, keep property non-judicially, a claim that has the right to say we can't rely just on the government's view because of the procedural rules, we can say go to court and prove it. And if the government is right, they can prove it in court. But they have to go to court. And here the government said we're going to ignore the dictates of the law. We're going to just say it because we believe it. And if that were the principle, the government's forfeiture power would be extraordinary. Ultimately, the jury did fine for the government. Is that not correct? Judge Sloboda, they did, although in the case we believe that there was clearly inadmissible evidence allowing 70-year-old hearsay that was second and third level come in that allowed the government to present. But it was proven by the jury. There is a jury verdict, and the judge specifically said that he agreed with the jury. Is that not right? That certainly happened after the fact that we had the trial. And, again, those are issues we can speak to. Okay, well, but that's the end of the trial. Don't we always take what the jury said to be the fact? Well, in fact, Your Honor, that's why we're thankful to be before you, the panel, as in any case. I don't think it's right. You're giving us too much credit. Thank you, Judge. So, but you're absolutely right, Judge Sloboda. That was the decision of this jury. We believe it was based on these Secret Service reports in which the judge did not apply 805 and allowed hearsay within hearsay, which allowed the government to tell a seamless tale. Mr. Greer. Yes, Judge. We may yet get to the evidentiary questions after we've passed the CAFRA threshold, obviously, but if I could follow up on Judge Fuente's question, and this may seem simplistic, but there seems to be no question that what the government affected here was a seizure and took the position that they did not need to file or pursue administrative forfeiture and expressly said that they did not intend to do so, correct? This seems to me to be your position, that is, that you're engaging in a kind of legal fiction that transforms the act of seizure into a forfeiture action itself.  Yes, please. There are a number of responses. The first is, in this case, I would submit it doesn't matter, because what the government did is they sent a letter that clearly said their intent was to confiscate the property and they were not ever going to go to court. But they've also made clear that their intent is not to pursue an administrative forfeiture proceeding, correct? They say what they are doing. They believe not to be a forfeiture because they have the right to do this. And you actually had remedies, didn't you? I mean, you didn't have to sit on your hands and wait for the government to take action. You had any number of remedies. Rule 41 remedy, you could file a claim and reprimand, or you could have done what the government eventually did. You could file a declaratory judgment. And you've successfully prevailed with respect to several of your causes of action, and we're giving a remedy for that. If I may, we didn't have criminal rule 41 because it wasn't a criminal case, so that wouldn't apply. Why does it have to be a criminal case? Rule 41 doesn't talk in terms of just criminal cases. You can file a rule 41 motion before there's been an indictment filed. Well, we could, but I believe the government has said when they have seized things civilly and claimed they're not doing it for any other purpose, they've objected to that. But I agree, Your Honor, that we could have done that. But the whole point of CAFRA, if I may, Your Honor, is that a person, when the government seizes their property, which clearly happened, has some remedies so that they can have the government not abuse its powers. And in this case, we get there either one of two ways, because the government gave notice that they were confiscating it, they were doing it non-judicially. Casella, which is the expert relied on by both sides, says that the notice doesn't have to take any different form, and they clearly said, separating from all the other cases cited by the government, that they're disclaiming a judicial forfeiture, they're simply confiscating it. And that is all a non-judicial forfeiture is. You're still assuming it's a CAFRA case, and I think what Judge Fuentes, Judge Smith, and perhaps others, including myself, are concerned about is do we even get there? Let me pose a hypothetical to play this out a little more. You're familiar with the U.S.S. Constitution? Of course. I try to cite it as often as possible. No, no, the U.S.S. Constitution. Oh, the U.S.S. Constitution. I missed the S. I didn't like that as well. Assume for a minute July 4th of next year, some exuberant Boston College students commandeer the ship, and then they're tracked down later, and either by force or deceit the government retakes possession of the U.S.S. Constitution. Is it your position that the government must institute a forfeiture action? Thanks. No. And can I make one point just in response to Judge Smith as well and answering this first? The second point in which we would be able to do it is, clearly Section 983A2 clearly says that after seizure a person can file a notices claim and thereby start the CAFRA timeline, and that was done here, whatever you think of the notice. Now getting back to this situation where the government clearly can't abandon property, we agree to that. When there is a clear theft here, the government has a lot of options. The only time that they can, in this instance, say that it's a civil forfeiture proceeding is when the government says we intend to seize it and we intend to confiscate it, keep it, and not go to court. If it's for a criminal procedure, it's done for some other reason, that is different. And in this case there is no question this was out of government's hands for at least 70 years. So if the college students secrete the USS Constitution and we can't find it for 20 years and they give it to their children and then the government finds old ironsides, they then have to do a forfeiture action? Well, here again, if the government has evidence of a criminal case, seizing it if they have some other basis to do it. And again, if the government is effecting an administrative forfeiture, that can only be done on consent. You keep saying an administrative forfeiture, but that's assuming the answer to the question that we're trying to get you to get to. The question is not whether, you know, everything that the government does is an administrative, well, I guess that is the question. Your position seems to be everything the government does, if it takes something, is an administrative forfeiture. And they keep saying it's not a forfeiture we're entitled to, and the district court agreed with this, to do what is in effect file a quiet title action. There is some question about the ownership of this property, you know, and ultimately that was resolved through the declaratory judgment action. What is the flaw in the district court's reasoning in saying that a declaratory judgment action in the nature of a quiet title to decide whose this property is, is the appropriate way to resolve a question when the government says, we're not acting as the sovereign, we're acting as a property owner. A couple of flaws there. First, it would eviscerate CAFRA. Why? Because CAFRA is going to apply in the mine run of cases, the 99% of the cases where the property isn't stolen from the government, but it's the proceeds of drug activity or some other illegal action. But isn't the distinction here, and I ask you this question, with Judge Hardiman's hypothetical, if the USS Constitution was taken back by the government, but the state of Virginia then says, wait a minute, we had that ship, you know, 100 years ago, and they file a seized asset claim saying it's the state of Virginia's property. I mean, isn't that the distinguishing feature here that once that occurs, then you are under CAFRA, and if a seized asset claim is never filed, then property gets forfeited administratively by consent. It just happens. That is correct. Judge, if I may just come back to that hypothetical. Can you go back to Jessica's question? Yes. Absolutely. Judge, the issue that we have here is a very different issue. The government is not a situation where the government is holding property for some other reason. The government has specifically said it. And 983A2 was intended to give a person a right when the government says, we are not going to file a declaratory judgment claim, we're not going to file a repledging claim, we're just going to keep it. The government waited four years, Your Honor, before they did anything, and only because they wanted to play, you know, they wanted to try to take advantage, because most claimants will not have the fortitude for a 10-year litigation over documents. That doesn't seem to answer the question, which you started with your assertion that this will effectively nullify CAFRA. And so I put it to you again. Isn't this a most unusual case where the government is saying, we're the property owner, and it's not going to affect the vast majority of CAFRA cases where the forfeiture affected has to do with criminal activity that is unrelated to government property? In fact, there's Section 641 in your answer. Yes. Because that's dropping out of this discussion. Thank you. 18 U.S.C. Thank you, Chief Judge. Section 18 U.S.C. 641 clearly provides there's a statutory provision for it, and there is no provision in the law or exception in CAFRA, et cetera, in these sorts of cases if the government can simply say, we're just going to keep it, and later we'll file a declaratory judgment or some other time. The government could have filed replevant. They could have done any number of actions if they didn't want to treat it as a forfeiture action. But simply to say, you could have done the same thing. You could have done the same thing and filed replevant. And you did file replevant. Ultimately, you could have done it earlier. You could have done it earlier. Well, you know, what CAFRA was intended to say is that because of the government's forfeiture power to keep this property, they need to follow the law under CAFRA. What the language did and what we did is exactly what the law requires. We told the government that we are not consenting to this administrative forfeiture, that they are required to actually go to court and do something. And I would submit, if you look at the plain language of the statute, there is no argument I would submit as to why this doesn't apply in these circumstances where the language clearly claimed property, where the government took it and confiscated it against their wishes, where they then said they're not going to go to court and refuse. The language did exactly what the law required in going forward and doing it. But the government never lost title to the coins. That's their position. Why do they have to go through CAFRA? In any case in which whether the government sees an airplane used in narcotics or when they're seeking anything, they have a claim. They never owned the airplane. But again, even when the government claims stolen government property, if they can avoid 641, 983, 1607 and simply go into court, that gives them an extrajudicial power. Doesn't that give you the same process that CAFRA was all about? Wouldn't CAFRA make sure that property owners got due process and seizure? And by virtue of going into court, you got what CAFRA provided for you. Well, a claimant could do that in any case. In fact, though, under CAFRA. What's wrong with what the position the government took? Because what CAFRA was intended to do is to make sure the government didn't use their vast power to force. Again, this was a ten-year litigation. The language we were forced to embark on four years just to get into court because the government claimed there was no right to go into court. And what CAFRA intended to address was the vast disparity in power. But the district court required them to come into court, and they filed the action. You had a jury trial. So the government was put exactly back in the position they would have been in if they hadn't violated the Constitution in CAFRA. They were there. There's no disincentive for the government in future cases. What's wrong with that? No disincentive for the government in future cases. What's wrong with that? What's wrong with the government? Don't you think it's too harsh of a remedy to say that because the government missed a deadline, they can't reclaim their own property? It's more than missing a deadline. It's missing a deadline that Congress specifically says you miss it at your own risk because you won't be able to seek forfeit of property. So we're not asking the court to impose that. That's what Congress imposed. That deadline actually was extended by the district court judge under CAFRA. Well, but CAFRA says that you can extend it. Well, the district court said, didn't rule, but said that we thought there could be a basis. But in fact, CAFRA says that it can only be extended for a good cause in the court in which the complaint will be filed, which we cite to not only Casella and other commentators, but also Casella that says that you have to file that before the 90-day runs, which is clearly the language. Also in this case, the judge found that the government did not engage in strategic decision-making and made other findings about their conduct that was anything but good faith. Also, the legislative history makes clear that good faith refers to when you're investigating a criminal case, you're making decisions about how the property may or may not be used. But can I get back to this situation? Because, again, the purpose of CAFRA is intended to make sure the government can't unilaterally exercise its power. It's the whole forfeiture regime that it's not enough for the government itself to say, the government can seize property and keep it. Not what ultimately happened here. Not ultimately happened, but that is only because in this case the landlords had the fortitude for the 10-year battle. But the idea of CAFRA was not a specific case. It was the government's conduct in all cases. But doesn't CAFRA apply to monetary instruments? We asked you to respond to that last week, and you found something, I believe, yesterday. It has to be a monetary instrument, does it not? A monetary instrument defined as coin and currency. And a coin has to be a legal tender, does it not? And, again, Your Honor, I've been litigating the 1933 cases in two separate instances for 20 years. But the point is the coins have to be legal tender. Well, the definition is simply coins, and there's no explanation of what that means. And we would say that in this circumstance, a coin minted by the mint with the symbol of the U.S., that that is a coin. So a coin does not have to be legal. It can be made by the mint, but not issued into the marketplace. And you're saying that's still currency, the equivalent of currency. It's an open question. Now, clearly it's not circulating. We believe currency is circulating money. Let's go back. It's clearly not circulating. It's in the destructive law. You keep taking the bait of currency. The statute says currency or coins. Exactly. So one would assume that coins are not subsumed within whatever currency means. But let me ask this. Would there be a difference between these coins and the kind of coins I see on late-night TV where you can send in a check for $70 and get a $5 nickel minted by a doctor? Well, we know how you spend your late-night TV. Some of us don't know about life. Judge, absolutely. And we agree that coins would not be currency because they're not circulating. Note that there is a 33 double eagle that could be used to pay groceries because a license was issued for it for King Farouk, which was discussed in the paper. And this is different because it was minted by the U.S. government. Wait, wait. Are you seriously saying that's – I'll defer for now. No, no. We're saying it's not in circulation. Clearly it's not. I mean, gold doubloons and pieces of eight are coins, too. Are you trying to say that that's coinage that's covered by the monetary instrument pieces? Judge, our position is that it's not in circulation but it is a coin. No, that our situation is a coin, not a doubloon, but that the 1933 double eagle would be a coin but not currency. But coins can serve as a commodity, too, with a value that has nothing at all to do with its face value. That's the situation we have here, right? Well, in fact, if you had a 1933 eagle or any number of valuable coins that sell for millions of dollars but were currency at some point, they would be both – they were clearly intended to be legal tender and still are. But we don't have to deal with that closer case because this one never even went into circulation. As far as we know, it was not sent to the Federal Reserve Bank to be used to pay debts. So don't – we have a more fundamental issue here. You keep talking about CAFRA applying to forfeiture situations and in a sense discussing what is nonjudicial forfeiture as any seizure sort of becomes a de facto nonjudicial forfeiture. But CAFRA is really set up to deal with summary forfeitures or administrative forfeitures as distinct from judicial forfeitures, right? And Congress, in doing that, in the interplay that we asked you about in our letter brief between CAFRA and the customs laws, has actually said that property with a high price tag is carved out from the requirements of CAFRA. So it is not – I mean, you would agree that property, a commodity, put aside the coin issue, that is over $500,000 is not subject to CAFRA, right? And Judge Cross, I have two responses. One is we didn't just have the seizure here. We had the government saying they were doing it nonjudicially. They said disclaim going to court, which is very different than every situation the government's relying on. They said they're going to court. And here we have two things. The $500,000 limit does not apply to certain things. Coins, but also property that the government claims was stolen and therefore can't be imported. So, for example, in the East Campus DEA case, that plane was clearly worth much more than $500,000, but because there was a specific provision, A3, the government could seize it in a summary proceeding unless a person objected. In the same way, if the government alleges property is stolen, it can proceed in a summary fashion unless a person objects. And so either provision would apply here, which I submit is why the government relegated to a footnote in the papers because it's an argument that doesn't apply to our situation. We can argue about whether these constitute monetary instruments or a different kind of commodity or fall under A2, but just stepping back to the big picture, isn't it the case that Congress anticipated by excluding property over $500,000 from the death penalty of CAFRA that there is a category of articles where the government's remedies are all intact? That is, they can proceed by virtue of irreflevent actions, declaratory judgment actions. Those are not shut down with the requirement of proceeding through CAFRA. So long as 1607A1 through A4 do not apply, since they are exempted from the $500,000 limit. But even here, I would say the government, again, by executing a nonjudicial confiscation. That's what they did. They're trying to get out of the consequences of it by arguing that if they did it, they did it without authority. Because what makes this case unusual is that, again, the reason why three federal agencies that had experience, the U.S. Attorney's Office, the Treasury Forfeiture Group, and the Secret Service, said you have to file a forfeiture action is because they know that's what the law requires. That's what the government did in the other 36 actions. Time's almost up and Brooks has a question. Did you ever answer the question of whether or not these coins constitute legal tender? Well, what I said is I didn't believe they were currency, and when I started to save judges for 20 years, we have been arguing about what it means to issue a coin, and I believe that there's no Treasury regulation or anything that talks about this unique circumstance. Okay, so you're still not answering the question. What I'm saying is it's uncertain because there's no definition of legal tender, and it's an unusual situation. Well, there is a statute that speaks to it. Well, there is one, but it simply says issued. And, for example, if there was a gold-for-gold exchange happened at the Mint, and the Mint handed it out but didn't send it to the Reserve, would that be issued? If they issued a license, as they did to another 33 double legal, does that make it legal tender? And I think there is a common law that if one coin is legal tender, then it applies to all similar type coins. Thank you, and thank you, Chief. No problem. Thank you, Mr. Zosmar. Thank you, members. Thank you. Thank you, Your Honors. May it please the Court, Robert Zosmar on behalf of the government, along with Zain Amjad, Nancy Brewer, and Jacqueline Romero, thank you very much for the opportunity again to appear before this unbanked Court. Mr. Burke begins, as he has throughout this case, by saying that this case is only about one thing. It's about an extraordinary and inappropriate abuse of government power. And that's what you say when your father and grandfather stole gold coins from the U.S. Mint, hid them for 80 years, kept them in a safe deposit box, concealed them from the government, and then they came to the light of day after another one of these coins stolen by the same person sold for $7.5 million. You say it's all about a government abuse of power. But what did the government do? The government took back property that belonged to it, which the jury now confirms belonged to the government, and said to the landlords, you don't think so? Prove it. Show us your title. The judge said we were wrong about that. The judge said we should have given the landlords more process. The government made a mistake. That's the, quote, extraordinary and inappropriate abuse of power. And we took our medicine. The judge gave a remedy for that, exactly the remedy that the landlords asked for, which was have the government file the complaint, have the government bear the burden of proof. And so we did. And after that, the rest of this is smoke and mirrors. They obtained the remedy that they wanted. What I want to talk about first is the declaratory judgment, because that's the easy way to resolve this case. It's not often in a case so involved that you have such a clear path to affirmance. But the declaratory judgment is based on a statute that a court, regardless of other remedies, can always grant a declaratory judgment to parties before it. And the answer to this case, this whole business about forfeiture, this was not an administrative forfeiture. I hope I get more time after my five minutes to go through the details of forfeiture, because I will say I didn't do a good job of that at the last argument. I assumed too much about these forfeiture proceedings that the government uses every single day and that are very familiar to us. But before talking about the fact that forfeiture doesn't apply, even if forfeiture does apply, the entire answer to this case is in CAFRA. It's in section 983A3B, where it says if CAFRA applies, if you gave notice, if you get a seized asset claim, and you have 90 days to file the judicial forfeiture action. That's what their whole claim is based on, that we missed that 90-day period, and therefore we lose the coins. But what does CAFRA say in A3B? It says the government shall promptly return the property and may not take any further action to affect the civil forfeiture of such property. Congress is explicit. The penalty is you can't go and get civil forfeiture. It does not foreclose any other remedy, and certainly not the remedy that every property owner in the world, not just the United States has, which is to file an action to recover its own property, whether it's declaratory judgment or replevant or anything else. That's the answer to this case right there. And so the judge entered the declaratory judgment, resting on the findings of the jury, and that settles the matter. All that's left in this case are their additional arguments that are meritless regarding hearsay and the substance of the evidence. The evidence in this case was clear. It didn't rest on hearsay. It rested on mint records that the district judge explained were meticulous, that the experts said were a puzzle that fit together, that showed not a single one of these coins lawfully left the United States mint. The declaratory judgment should be affirmed, and we don't need to get into these thorny issues of forfeiture, but I'm happy to do that because the fact of the matter is this is not a nonjudicial forfeiture to which CAFRA applies. A claimant cannot show up where the government has seized property for the many reasons it seizes property, whether in a criminal case or a customs matter. A claimant can't show up and say, here's my 983 seized asset claim. I have just created a nonjudicial civil forfeiture subject to CAFRA, and that's what they do. They say we sent a letter saying we're not going to court, and therefore it's, quote, nonjudicial. This is a letter sent by an official of the United States mint that says we are not doing forfeiture. It's sent by a person who has no authority to do an administrative forfeiture. It concerns property for which you can't have administrative forfeiture because it's too valuable, and they say this letter was a notice allowing them to file a seized asset claim, and suddenly this is an administrative forfeiture. It's not. The government seizes property for all sorts of reasons that are not a, quote, nonjudicial civil forfeiture proceeding, which is all to which 983 applies. So this was never a forfeiture claim. This was a title dispute between two parties, the property owner and the putative claimants to the property, and the government prevailed in that case. One of the things is that people argue that they, in effect, there was a stolen government property, but in order to get that property back into your hands, wasn't there a subterfuge used? Supposedly there were negotiations going on. You get the property for purposes of authenticating it, then you don't give it back. I think subterfuge is a strong word. Well, they certainly didn't just say, okay, you can have them and you can keep them. No, but, I mean, the officials at the Mint agreed in 2004 to take the coins for purposes of authentication. There's no showing in this case that they were deviously thinking in the back of their minds, oh, now we're going to cleverly get the coins. No, but at some point they made that decision, didn't they? They did, and at the point they made the decision, the coins were in their property. You've chosen to characterize it as the government utilizing self-help. Don't you think that's a bit of an inelegant way of describing what the government tried to do here? No, what I'm saying, Your Honor, also in response to Judge Ambrose's question, is when the government realizes these are authentic, these are 1933 double eagles, at that moment it is in their possession and it's their property and they keep them. Now, again, the district judge ruled on this, and the district judge said, that's all fine, but you need to give them some process, and that's what he did. Maybe I was not clear, or maybe I'm harping on a very, very minor point, but it just strikes me that invocation of the term self-help, which seems to place the government on the same footing as a citizen, isn't quite an accurate way of describing what a huge government does. But setting that aside, isn't your argument really,  that what they seem to be suggesting is some exclusivity to 1607, that the government had to go that route, and there's no exclusivity to that at all? Absolutely, and that's the explanation of forfeiture, and if I get, now or later, a couple minutes to give this explanation, I'd like to do that. Because the fundamental point here, and this is what I didn't explain very well, and again, I regret that, from the previous proceedings, the fundamental point here, as Your Honor suggests, is that the government has the option of administrative or judicial forfeiture, in any case, where forfeiture is appropriate. Forfeiture is not appropriate here. You don't forfeit property to yourself, which is what we're talking about. Mr. Shultz, if I can interrupt you, there's a provision in section 641 that says the following property is subject to forfeiture, property having to do with an offense constituting specified unlawful activity, and it includes theft or embezzlement of anything of value of the United States. So the forfeiture statute says the property that was stolen, and it's a thing of value of the United States, is subject to forfeiture. So I don't understand. Let me come off my explanation, and I'd like to get back to it and answer Judge Rangel's question, which is 641 itself says you can't steal government property. It doesn't mention forfeiture. The reason forfeiture is allowed is from section 983, which incorporates section 1956 for specified unlawful activity. When you walk through the chain, you find about 200 statutes, including 641, for which forfeiture is permitted. There's a really good reason that forfeiture is permitted for stolen government property that has nothing to do with transferring title to your own property.  So if they had taken these double eagles and sold them and received $50 million, we can't forfeit that $50 million. We don't have title to that cash. But we do have a forfeiture action. But you can forfeit this property, and it is subject to forfeiture. So the fact that the title really isn't involved. So the fundamental question becomes, Your Honor, when Congress said you can forfeit government property in the way you described, did it also mean to say, government, you can't do anything else? You lose any other remedy you might have under the law. And that, the answer is in 983 where it says no. The only thing you get by violating CAFRA is you lose civil forfeiture. Then you render, if you say, and you did say, that that provision says you cannot take any further action to effect civil forfeiture, that, oh, well, declaratory judgment doesn't effect civil forfeiture, so I can do that. You are gutting the entire provision of 983 that provides for a claimant to file a seized asset claim and require the government to prove it right then and there within 90 days. Aren't you rendering that meaningless? No, that's our disagreement, Your Honor, which is that it's the difference between the government acting as law enforcer and acting in a second manner as property owner. As we said in our hypothetical in the in-bank petition, any other property owner in the world, if the government misses a forfeiture deadline with regard to any of these 200 types of forfeitable property, can file an action against the thief to get their property back. Isn't there a constitution? Isn't there a constitution though that the U.S. government is not any other property owner in the world, that the Congress regulates regularly what the government is and isn't permitted to do? And it said very specifically, here's how you get property back, and it listed the things out, and it said these are the time frames you have to follow in order to do what you want to do. It seems like your only route out of that is the one you've described, which is being subject to forfeiture means only forfeiture, but it doesn't answer the question to say, well, we're just like any other citizen, because you're not, are you? No, let me answer that, Your Honor. We are not like any other citizen, and that actually plays in our favor in this matter, because there are many jurisprudential doctrines that favor the government when it comes to its own property. The U.S. Supreme Court, many times over many decades, has said exactly what Your Honor just said. The government is no ordinary actor. It holds a vast amount of property. Which means your assertions about self-help, as Judge Smith noted, are a little tough to swallow, because the government is supposed to be behaving in a better manner, and indeed one could argue, as your opponents have and as the majority of the panel noted, one could say the Congress has set out exactly how you're supposed to behave, and it didn't. And again, Judge Davis addressed that. And there is no remedy of losing the property altogether for failing to live up to our obligations, a resolution we have not further disputed. But I have other parts of these answers, if I may get to them. First, Your Honor, with regard to the power of the government, the Supreme Court has said statutes of limitations are construed strictly against somebody asserting them for the government. Government employees cannot, by laches and negligence, give up property. The U.S. Constitution says nothing in the Constitution can be read to deprive the government of its property interests unless it's explicit. So what's explicit here is it says you're limited to civil forfeiture. You want to talk about what's unconstitutional. What would be unconstitutional is to then read that statute to say you can't have civil forfeiture, and by the way, government, you can't have any other remedy that every other property owner gets. That's fundamentally unconstitutional. Mr. Salzberg, doesn't it prove too much to try to tie this to the government's title to the property? Because the statute also provides that the property or proceeds of specified unlawful activity, that the ownership vests in the government at the time of the offense, not at the time of a seizure or at the time that it's judicially or determined by a jury to be the government's,  so wouldn't your argument lead to the conclusion that if the government felt confident or there were sufficient evidence in the government's view that the offense had taken place, that all that property out there could just be taken and put Caffer to the side because title was already in the United States? No, Your Honor, because under the statute, once the government proves its forfeiture case, then it has title as of the time of the offense. It has no title prior to establishing its case. What's different here is that we... That's not what the statute provides. It has title vesting at the time of the offense. It belongs to the United States. It does, but if I stand here today and file a forfeiture action, I have no title at this moment. If I get a judgment, yes, my title then reverts back to the time of the offense, but I have to prove my case. Isn't that exactly where we are here, where there's disputes about title? Well, we're getting back to what the Mint thought, and what the Mint thought was that it had title earlier. It asked specifically the language, where's your proof of title? And then they have nothing to give in response. And so their view was this is different. But again, we're talking about the remedy that Judge Davis gave. It has nothing to do with whether we then instituted an administrative forfeiture and have this death penalty, this death penalty. That's really inappropriate to say, especially given the next case, so I take that back. But you have this draconian provision where you lose the property of the United States. That's what's different. If I could say something more. Can you talk a little bit about the proof and the specific question? You relied upon the Treasury reports. There's an exception to the hearsay rule. Oh, sure. Assuming that this is not a CAFR issue and we get into the trial. We're into the trial, yes. Sure, and I'll try to get back to Mike. Are you saying that 805 does not apply, Federal Rule of Evidence 805 does not apply once if established that the reports constitute ancient documents? They don't apply for a couple reasons, Your Honor. One is 803.16 itself, the ancient document rule, refers to a statement in a document. It is not hearsay if it's in an ancient document. But that's singular. I don't know if that helps you. as opposed to saying statements in an ancient document. You could also interpret that to say that the statement, i.e., whatever constitutes the ancient document, comes in under 803.16, but anything subsumed within that statement has to satisfy 805. I don't think so. I think it would refer to any statement. But further on, 803.8, A3, says that factual findings from a legally authorized investigation, not in a criminal case, are not hearsay. And that's principally what we relied on. Is that what the district court relied on? Yes. And we didn't even rely on it for the truth. The court wrote a very long opinion about it. We didn't even rely on it for the truth. The proof we were saying is, look at the Mint records, which are not hearsay. The Mint records show literally to a penny everything this cashier gave in and out. They're these remarkable records. Can we go back, though, Mr. Zosmer, to what I understood, just to ask a question B, which really is the starting point. And that would be, is there some kind of connection between 803.16 and 805? And I assume you would agree this Court has not directly addressed that question. It hasn't. I mean, this is an exquisite evidence question, the sort of question we rarely get, even a three-digit panel. He's going to steal it for his law school exam. Sure. And few courts have, Your Honor. The Seventh Circuit case they relied on is one sentence. There's no real analysis. But your construction, your recitation of the language of 803.16 in response to Chief Judge McKee didn't seem to satisfactorily address whether or not 803.16 contemplates and covers various layers of hearsay, hearsay within hearsay, hearsay within hearsay within hearsay. Right. And what I'm saying is that 803.16 applies to every layer. So we're not saying 805 doesn't exist. 805 says you have to justify. So once you get past authentication, anything within that document, no matter whether it's he said that she said that he said 55 years ago, comes in under that exception. That's right. And it comes in for whatever weight it has. A judge could still exclude it. I was about to say, isn't the pushback to that? But, yes, the district court always has the authority, whether it's under 403 or whether it's some other evidentiary proposition rule to excise, to redact. This is classic 403. This is where it comes into play. And that's what's important in this case. The rules are written for general situations. And, generally, statements from 80 years ago were not written for litigation. Were not written for litigation. Is there any kind of cross-reference between 803.16 and 805? No. Certainly in the text. Is there anything in the notes? No, not that I'm aware of. How about the advisory committee notes where they do 803.16 where they say that the exceptions are phrased in terms of non-application of the hearsay rule rather than in positive terms of admissibility in order to repel any implication that other possible grounds for exclusion are eliminated from consideration. Exactly right. And, of course, 403 and 401 would be major reasons. I don't want to distract you, but it strikes me. I've had problems during this discussion. I didn't hear any panel argument. It didn't hit me. But we're approaching this in terms of title to the money, which seems to me to be totally wrong. We're not really talking about title to the money. We're talking about the right to possess the money. That's a very, very different issue. I've got a $20 bill in my pocket. I don't doubt the fact that the United States has title to it, but I don't want Mr. Meninger reaching into my pocket and taking the money that his boss has title to. He won't do that, Your Honor. Oh, I'm sure, I'm sure. Oh, the marshal's here. But it's a question of possession, and that does seem to me that in this situation to get into CAFRA because it talks about not only theft under 641, it also talks about purloining, and this seems to be the classic example of what would be meant by purloining government property, if you will, that someone else says that they have the right to possess vis-a-vis the government. And under that scenario, I'm having a hard time trying to figure out why CAFRA doesn't give us the answer. You mentioned the Constitution. All the Constitution says, and I'm not minimizing it, is that nothing in this Constitution shall be so construed as to prejudice any claims of the United States or any particular state. Congress shall have the power to dispose of property and make these rules and regulations. CAFRA is the regulation that Congress promulgated to satisfy the obligation of the power under Article 4. What's wrong with that way of looking at this? Thank you for that question, Your Honor, and that's why you need it. I didn't mean to throw you a softball, as a matter of fact. Maybe you did. You might have. Or it's an errant pitch. Because that's why we need a declaratory judgment because it's the declaratory judgment that establishes title. And that's why I didn't do title again. Wait, wait. That's not title? That can't be right unless you want to give up on your initial salvo, which is we didn't need to do a forfeiture because this coin is, was, and always will be property of the United States government. That's right. But then when there's a dispute. So why do you need a declaratory judgment? Because there's a lawsuit. And then the issue was. So why isn't it just a simple replevant action? If it is, was, and always will be the property of the United States government, why isn't the answer to this very complicated case something as simple as, they need to go into court in a replevant action and prove that you're wrong? That is the answer. And if the coins were in their possession when this. . . How do you repleve property that you have possession of? No, no, no. I was saying that the landlords have to go into court with a replevant action and prove that it is not the government's property. And if you didn't possess it, then you would have to go into court. Exactly. Possession is nine-tenths of the law. Exactly. And that's what this case is. And let me point out that when the government. . . Exactly. That's extraordinary because if that's the case, then you get to go and just take anybody's stuff and say, well, it's ours. Well, no, we say it's ours, so we don't have to do anything because we say it's ours. Well, doesn't that prove way too much? It's a burden to them to try to get it back. Let me say very clearly, we are not saying, and I've never said, that the government can take property and that there's no remedy. There is always a remedy. It could be a criminal case. Well, how else would they get, though? I mean, they have to force the issue, right? You weren't going to give them any process. You just say it's mine and that's it. And this is what Judge Davis resolved, and this is what we haven't challenged. But you really can't say exactly to Judge Hardiman's question because that would just be saying there's really no such thing as due process. Judge Davis made you do something because he perceived you had violated due process. That's right, and we are not. Is that your only safe ground? Correct. We are not challenging that further. We now have this ruling, which we're abiding by, that the government must give process, and we did. But there is no provision in the law that we lose the coins. On the declaratory judgment, let me add, and this goes back to Judge Davis. Can I just ask you the question? You mentioned if they file a replevin action, doesn't that give them a right to a jury trial? Yes, it does. And you're saying, however, you filed a declaratory judgment action and it's not replevin, but should it have been replevin if you had taken it as the panel initially ruled unconstitutionally? Right. Our position is that a quiet title action is not tried to a jury. In this case, it's a moot point because it was tried to a jury. In fact, when the jury returned its verdict and found forfeiture for the government, the appellants said to the court, don't even enter a declaratory judgment because that answers every question. If you have to give it back, if the taking was, as the panel ruled initially, unconstitutional, and you have to give it back, then your declaratory judgment action becomes one for replevin, does it not? It does, but the court said, and I think it's right, that we wouldn't have to give it back. We could ask the court to hold the property at the time a declaratory judgment action is filed. But, again, we're talking now about this.  So if they had at that time a right to a jury trial, how, by the government's unconstitutional seizure of the property, do they also lose their Seventh Amendment right to a jury trial? I'm not disagreeing. We're channeling Judge Davis here. This is the ruling. This is the remedy they asked for. It's the remedy they got. But, Mr. Zalzman, is there a difference between a replevin action and a quiet title action, and is that why you're saying there's a Seventh Amendment? Yes, in the law there is a difference. A quiet title is an equitable action, and under the law, I didn't make this stuff up, so when you have a jury write them in, you don't. And I think none of us would have written the Seventh Amendment the way it is right now if we did write it. But that's the law. And so we've answered the question, but in this case it's really moot, because there was a jury trial, as Judge Slobiner mentioned, and it plays the same way. If we conclude that there were fatal flaws in the jury trial, given the way that Judge Davis articulated his grounds for the declaratory judgment, would the declaratory judgment necessarily also fall? Yeah, you'd have a new trial. If they win on their evidentiary grounds, you would have a new trial on all the claims. In fact, if that's the case, then we can consider the Lang Board's explanation as to how they got possession of the coins, which is that there was a gold-for-gold exchange at the same time, 1933, that the coins left them in. Sure, and the jury rejected it. Well, if we don't agree with the jury verdict, sure. Sure, but I don't think they haven't. They didn't appeal. But if that's the case, then you would be bound by the forfeiture statute. Well, no. We would have a new trial if there were evidentiary errors, in which we would still have our declaratory judgment claim as well as the forfeiture. On the declaratory judgment, I want to point out that when the government filed that action, even the appellants agreed that it was different. They tried to stop it. They were against us filing a declaratory judgment action. And what they wrote, page 1199, is the analysis necessary to determine defendants' proposed replevant and declaratory judgment claims delving into matters of title, ownership, and superior right to possession is far beyond the scope of the question of whether the coins were stolen. In other words, far beyond the scope of the forfeiture. They agreed with us, and they were right. And Judge Davis allowed the declaratory judgment because Rule 15 gives very broad discretion to do that. You've agreed that the remedy here may be ultimately that this goes back for a new trial. We've discussed a little bit evidentiary issues that have been raised. And in the end, it may be, if we do get to the question of whether or not a new trial should be considered, we're considering errors, and whether or not those errors were harmless. The other side has characterized your use of witness trip as essentially a conduit for hearsay. Why are they wrong about that? Didn't he rely extensively, beyond extensively, on what would constitute reams of hearsay? He did, and that's what an expert is permitted to do. Well, first of all, an expert is allowed to rely upon it. However, is an expert entitled to regurgitate it time and again before a jury? Yes. Rule 703 says that you can explain to the jury the material on which the expert relied. And as Mr. Tripp explained, this is what expert historians do. They look at everything they can find, every law enforcement, public, any other record. Including double hearsay, which might be a reason to cabin 805 and suggest that to not cabin 805, asserts that 805 applies under 803.16. Well, I've made my arguments about hearsay, but let me also point out the harmlessness of the error. Just to pick up on an earlier question of Judge Smith, the advisory committee note also says to 803.16, authenticating a document as agent leaves open, as a separate question, the admissibility of assertive statements contained therein as against a hearsay objection. Since most of these items are significant evidentially only insofar as they are assertive, their admission and evidence must be as a hearsay exception. Then it goes on. In a hearsay situation, the cleric is, of course, a witness, and neither this rule nor 804 dispenses with the requirement of first-hand knowledge. Doesn't that mean that Rule 805 applies to the ancient document exception? No, it doesn't explicitly say that. It says find the hearsay exception, and we have two. We have 803.16 and we have the public records exception, which allow factual findings made by law enforcement officers when introduced in a civil case. But the hearsay within the hearsay, you get one in, but the hearsay within it has to have its own separate exception, doesn't it? It does, and these exceptions apply to every layer, as I said before. But let me also say one last thing, if I can, about the harmlessness of all of this. Besides the fact that the expert was allowed to rely on it, if you go back and read the closing argument, read the judge's opinion, read everything, you'll see it's not based on this so-called hearsay. It's based on evidence that emphatically is not hearsay and has not been challenged. The records of the mint show to the last coin that not one of these lawfully left. Bank records, which are not hearsay, show that money went from Switt to McCann. Switt's statement that they say in their reply brief, they're not objecting to. Switt's arrest. Not conviction. Not conviction. The judge instructed on that that that could be used for a proper purpose. The Switt admitted, though, that he sold all 10 coins that the Secret Service ever recovered before these 10, which, of course, are in his daughter's pocket. The opinion, right? The opinion went into it. Am I correct? Again, a clear, limiting instruction. Am I correct? Yes. How often have you seen a judicial opinion admitted into the record and before a jury? I can also say it's my first case involving an 80-year-old crime. You just have to get a little older like the rest of us. I'll try. I'm trying, Your Honor. But the judge gave very clear, limiting instructions on these things. There was an abundance of evidence. I only have about 50 seconds left. I wanted to give the forfeiture explanation if the court will indulge me for a moment, but, of course, I'll answer other questions. Administrative and judicial forfeiture. You've got to look at the statutes. The government always has the option, and that's another problem here in applying CAFRA. CAFRA says that if it's a nontraditional proceeding and the government doesn't give notice, this is in A1F or something, and the government doesn't give notice, the government has to give the property back but does not lose the right to civil forfeiture. What that means is the government always has a choice. It can elect, and I'll tell you we do this every day, it can elect whether to do administrative or judicial forfeiture. The system set up by Congress is a carrot and a stick. The administrative forfeiture is a big carrot. It lets you, with certain property, get the property in your title in no time at all, send a few notices, publish it, and it's yours. But there's a stick, and the stick is the claimant can come in and make you file a judicial action within 90 days. So what Congress said to the government when it set all this up was, sure, we'll give you this easy, quick method of administrative forfeiture. We'll only give it to you for low-value property or for property that we've seen in the past, like monetary instruments, which means cash, that we've seen in the past that people don't, in the end, dispute. We'll let you have this quick method, but you've got to be ready. You've got to have your case together, because someone can come in and make you file a judicial forfeiture in 90 days. Okay. We'll let you go over a little bit because we'll let Mr. Burke go over. I'd like to ask him a question if I can, please. You want to ask me? Yeah. Go ahead. Ask the question, and then I'll bring, like, a 30-second answer. In this entire trial in the district court, did Grandfather Swift ever give an explanation of how he got a hold of the 33 Golden Eagles? The explanation from the Appellant's Honor was a hypothetical. Maybe there was a bag of open coins sitting in the cashier's office. Maybe there was a two-week window where there could be a gold for gold exchange. That's an explanation? No. It was a hypothetical. The jury flatly rejected it based on overwhelming evidence, including the most meticulous government records you're ever going to see. I hate to say to a court. Thank you very much. Leave it on those words. Thank you. Did that answer your question? Well, if you think that's an answer. I kind of did, actually. I think it answers the bad answers. If I may, thank you, Chief Judge. Let me ask Mr. Burke the same question. Go ahead. He represented these people. What explanation is there on the record as to how this auction house, well, no, this antique place, every antique place I've ever dealt with has the provenance of each item that it has. What explanation did they show from their records as to where the gold and eagles came from? The argument was that it was a gold for gold exchange, and there was a coin dealer whose deposition was taken. He didn't have any papers that showed it? He said there was a gold for gold exchange. There was no paperwork as to that, but there was paperwork that the cashier that preceded McCann had an open bag of 33 double eagles and wasn't filing mid-procedure when exchanging gold for gold. And if I can get back to the question, Judge Flover, if I may, the government has no answer to the fact that Congress clearly authorized when the government claims it's stolen government property, they're bound by the forfeiture laws. The government does not have fewer rights. Do you have a case that says the government may not file, say, declaratory judgment actions they did here if you say CAFRA applies? Is there a case that says CAFRA precludes it? What we cite, we cite a couple of different cases. Algon, which says you can't use declaratory judgment to get out of time limits, is what the Third Circuit said. Here, we get another CAFRA 90-day. We also tried to cure it in CMD. Government, the reason they couldn't pursue their equitable remedies, because they have greater rights. They have equitable remedies. They also can seize property. It's because they unconstitutionally seized the property, so they could not seek replevant. But they also chose not to go to court because unlike what we've heard from the government, that they could always go to court or administratively. They said they won't go to court, and they've denied that they will ever go to court. So what they did, though, is instead of going to court to pursue any of these equitable remedies, they did what they did. And he freely acknowledged, as I think he has to in the face of the district court's decision, that that was an error. It was a mistake for them to take the position that they owed no process to your clients. But the question that's still in front of us and in front of you right now is, on what authority do you rely to say that CAFRA and forfeiture is the exclusive means for the government to claim its own property, that it can't file a quiet title action in effect? We have two. One general, and that is that it's a special statutory proceeding because it provides rights and remedies, the whens, the wheres, the how to. And no court has said it does not. No court has said that, in keeping with Judge Shigaris' question, I looked for it and I didn't see any authority in your papers for the assertion that the forfeiture remedy is an exclusive remedy. And we are not saying it's exclusive. There are plenty of equitable remedies. What we're saying is two things, three things really. One, declaratory judgment can't be an end around around timelines. Two, where you have the CAFRA regime, it is a special statutory remedy, so declaratory judgment alone is the only equitable remedy not available. Three, here where the government didn't file declaratory judgment at the outset, didn't file it in response to a complaint, waited four years in what Judge Davis found sounded in strategic judgment, and only after they lost the final judgment did they try to file a declaratory judgment. On that point, you have to say, because it's your only way out, right, that that's an abuse of discretion. We're viewing what Judge Davis' decision was with respect to allowing them to amend under Rule 15 on an abuse of discretion standard, right? We have two arguments to that. One, abuse of discretion under Rule 15, but also that if we are right and the judge should have granted the CAFRA relief, then as a matter of law, they would have been barred from filing because the case would have been over and they would have missed their mandatory counterclaim. So that we believe is reviewed as de novo. He's still responding to this in terms of title, and I am having problems thinking of title, quiet title in terms of cash. Am I missing something here in that this is really about possession to property and it's clearly, I can't say it's clearly the property of the United States government, but the issue here is really possession, not necessarily title, because no matter how the current people got it, you're not saying that. You're saying it probably came through a theft, but you're not conceding that. Well, I'm sorry, Judge. No, go ahead. What I would say is it's clear what the government actually says in the declaratory judgment is that they were not lawfully removed from the mint. Their theory in declaratory judgment is exactly the same under CAFRA, that they were stolen. So they're not introducing anything new, and if the government could obviously do this end-around around the statutory provisions, that's what Algron says. The way the procedure ended up being set up, the government had the burden throughout, correct? They did. Okay, and if this had been a replevant action, if you had to file a replevant action, you would have had the burden throughout, would you not? If we filed a replevant, again, if we filed a replevant and it was treated strictly as inequitable, yes, we would have. You would agree if it were personal property valued over $500,000, you would not, on the grounds of CAFRA, be objecting to the government proceeding by a judicial forfeiture or a declaratory judgment action? If they had done that. But what can be lost to a judge is that it took a four-year battle just to get them into court, and what the government did, unlike what the government's claim that they had an option, is they said they're not pursuing the one option. They're doing what Congress said, you're bound by CAFRA's reform if you do it. You've argued here that the government has waived the argument as to these being monetary instruments and not property, where you would agree that they could pursue these other remedies. We have said, even assuming that there's a waiver, that in exceptional circumstances we will engage the merits. Those include, under our Huber case, one, that it is truly a legal issue, and two, that failure to reach the merits would work a miscarriage of justice, and that resolving it on the merits would be in the public interest. Why don't those Huber factors apply here? Just take ten seconds because we're way over now. Ten seconds, I would say, on extraordinary. The reason the government's in this position is because they did engage in a nonjudicial confiscation. So it's not that justice so requires, because they engaged in a nonjudicial forfeiture and exercised those powers even if it exceeded their power. So it's a very different situation. Thank you. Can I say one point you've touched? Is that what I can answer? I think we probably ought to be able to answer that question. That's a no. Thank you very much. He was not strictly involved. Thank you. I want to thank both counsel for a very, very excellent argument in a Rubik's Cube-like case. So thank you very much. We'll adjourn briefly to recompose the quorum and then have the next case.